334

**In re HOFF.**

**SPIEGEL, Inc., v. BERVE.**

No. 6623.

Circuit Court of Appeals, Seventh Circuit.

Jan. 25, 1939.

Richard Mayer and William J. Welsh, both of Chicago, Ill., Fred E. Gardner, of Rochelle, Ill., and Donald M. Graham, of Chicago, Ill., for appellant.

Robert W. Besse, of Sterling, Ill. (Steven Helfer and Paul F. O'Neil, both of Rochelle, Ill., of counsel), for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

Spiegel, Inc. (hereinafter referred to as "petitioner") filed a reclamation petition claiming title to certain machinery, and to certain merchandise which consisted of cloth, eyelets, zippers, and finished and partially finished jackets. Such machinery and merchandise was in the possession of L. J. Hoff (hereinafter referred to as "bankrupt") at the time of the filing of the bankruptcy petition. The referee in bankruptcy found that title to the machinery claimed in said reclamation petition was in the petitioner. The referee, however, denied the prayer of said reclamation petition in so far as said petition claimed title to the above described merchandise, and this is an appeal by the trustee in bankruptcy from the final order of the District Court dismissing the petition of Spiegel, Inc. to review the order of the referee, and confirming and approving such order.

The bankrupt entered into an oral agreement with the petitioner under the terms of which the bankrupt agreed to establish a business of making jackets for petitioner at Rochelle, Illinois, in a plant equipped to manufacture such garments; the bankrupt was to receive as compensation a certain sum per dozen; and the petitioner was to furnish the piece goods out of which the garments were to be made. As a result of this agreement, such business was conducted by the bankrupt in the City of Rochelle, Illinois, from on or about September 4, 1936 until on or about June 1, 1937, under the firm name and style of Rochelle Textiles.

The petitioner, from time to time, furnished the bankrupt with piece goods, zippers and eyelets, and this merchandise, together with thread, buttons and binding, supplied by the bankrupt, was used by the latter in the manufacture of jackets. The cloth out of which the garments were made

was delivered by petitioner to the bankrupt on certain merchandise consignment memorandum forms. A sample form of this memorandum is found in the footnote.[1]

The petitioner charged the bankrupt with a certain sum per yard on account of the merchandise covered by the memorandum. When finished garments were sent to the petitioner, the bankrupt received a credit against the amount charged in the same amount as originally charged to him, and in addition thereto, received credit of a certain fixed sum per dozen of furnished garments and compensation for their manufacture. After inspection by the petitioner, such garments as were found to be imperfect were returned to the bankrupt and he was charged with the cloth and material in them and with his compensation for manufacturing, for which he had received credit. These imperfect garments were sold by the bankrupt as he saw fit. There was also testimony to the effect that jackets other than those returned to the bankrupt as imperfect were sold by the bankrupt with the knowledge of petitioner. The bankrupt was allowed a certain number of yards per dozen for the manufacture of jackets, and if successful in manufacturing the same for less yardage than the allowance, he was to be credited with the "overage" and if more yardage was used, charged with the difference. No determination was made, however, in this respect. Two inventories were furnished petitioner by the bankrupt, the first on February 28, 1937, and the latter on May 12, 1937. A representative of petitioner visited the factory twice a month and made an inspection of the raw materials and finished products.

On one occasion when a strike was threatened by bankrupt's employees, the bankrupt stated to them in the presence of petitioner's representative that the factory was his; that petitioner had nothing to do with it and that petitioner was merely a customer of his, and that their pay would be increased if he could secure a better price from the petitioner for making the jackets. Thereupon, the employees went back to work and continued work until the plant closed.

At the time of the filing of the voluntary petition in bankruptcy, there was in the possession of the bankrupt a large quantity of the merchandise delivered to the bankrupt by the petitioner and also a quantity of finished and partly finished jackets. It is this merchandise to which the petitioner claims title.

---

[1] Merchandise Consignment
Memorandum
Spiegel
Inc.
1061–1101 35th Street,
Chicago.

Office Copy
Price O. K. ..........

........................
........................
(Approved)
Terms ...... Days.

No. ..................
Date ..................
Shipped by ..........

The merchandise described below, is hereby consigned to you under the following terms only:

1. The merchandise is consigned to you to be used only for the manufacture of articles for us exclusively.

2. The ownership and title to said merchandise will remain vested in us and will be protected by us against loss by fire, water, burglary, or other casualties.

3. Any imperfection in the merchandise delivered to you must be reported to us immediately, and you will return such imperfect merchandise to us at once. We will not assume any responsibility or liability for any articles made from imperfect material or delivered to us in an imperfect condition.

4. You will keep this merchandise consigned to you separate and apart from merchandise belonging to you, and you will always clearly designate the same as our property.

5. You will furnish us with a monthly inventory of the unused merchandise in your possession that is owned by us.

6. The valuations stated below are not intended to indicate a sale or loan of the consigned merchandise.

7. Your signature on the duplicate copy of this form which shall be forwarded to us immediately upon receipt of this consigned merchandise, shall serve as a receipt and acceptance of the consigned merchandise upon the above terms and conditions.

| Check | Quantity | Number |
| --- | --- | --- |
| Maker | Articles | Price | Total |

Received and accepted the above described consignment of merchandise upon the terms and conditions above set forth, the —— day of ——, 19——

336

■ The contested issue is whether the transaction between petitioner and bankrupt constituted a bailment or a sale. The court below sustained the finding and conclusion of the referee that the transaction constituted a sale and petitioner's claim was thus denied. A study of the record convinces us that a very close question is presented, but under the rule well established, we are required to accept the referee's finding provided there is any substantial evidence to support it. Both sides admit that the terms of the consignment memorandum are not determinative of the involved issue, but that the character of the transaction must be adjudged by the conduct of the parties. Even if the form of memorandum used was conclusive, it would not make the solution of the question less difficult. True, the memorandum contains the express provision that the ownership and title to said merchandise remains vested in the petitioner, but it is difficult to reconcile this reservation of title with other words which are ordinarily used in connection with a sale. For instance, after the word "terms" there was inserted in the various memorandums such words as "cash", "net cash", "net 10", and "net 30." These words are not easy to reconcile with a bailment transaction. In fact, we would say they indicate the contrary. Petitioner attempts to explain the terms thus employed as referring to the time when it was to make payment for the manufactured goods, but this explanation seems rather unsatisfactory. Provision No. 7 of the agreement required the signature of the bankrupt to a duplicate copy which was to be forwarded to the petitioner immediately upon the receipt of the merchandise. This was not done. In fact, the bankrupt refused to sign such duplicate and no question was raised by the petitioner concerning such refusal. No report was made as to imperfect merchandise as required by provision No. 3, no designation of the merchandise while in the possession of the bankrupt as the property of the petitioner, as required by provision No. 4, and no monthly inventory was furnished by the bankrupt as required by provision No. 5.

The facts and circumstances relative to the conduct of the parties are likewise difficult to reconcile as consistent with a sale. In the beginning, ten shipments were made to the Rochelle Knitting Mills rather than to the bankrupt. This concern was operated by individuals other than the bankrupt. The explanation for these shipments was to the effect that petitioner felt that the Rochelle Knitting Mills had greater financial responsibility than the bankrupt. This circumstance, to us, rather strongly supports the theory of sale and indicates that petitioner was relying on its extension of credit to the bankrupt rather than a retention of title in the merchandise delivered. There is evidence to the effect that the bankrupt made sales to third parties of the finished product other than the imperfect garments returned to him by the petitioner, and this, with the knowledge of petitioner. If so, this is likewise inconsistent with the bailment theory, as under such a transaction, the bailee could have had no right or authority to make such sales.

■ We have heretofore recited the circumstances in connection with the threatened strike of the bankrupt's employees. The trustee urges that this situation constitutes an estoppel as to the claim now made by the petitioner. We doubt if the conduct of the parties in this respect can be so construed, but whether so or not, we think it is a material circumstance as indicating that both parties gave recognition to a situation from which it may well be inferred that title to the merchandise was in the bankrupt rather than petitioner.

■ Our attention is called by petitioner to a number of authorities where the theory of bailment has been sustained under a great variety of circumstances. It would serve no useful purpose, however, for us to undertake to analyze these various cases, for in the last analysis the question must be determined by the particular circumstances of each case.

■ We reach the conclusion that there is substantial evidence in support of the referee's finding and the ruling of the District Court is affirmed.